UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-21544-UNGARO/O'SULLIVAN

RAMON MANUEL ADLER,

    Plaintiff,

v.

GARDENS ON THE BAY OWNERS
ASSOCIATION, INC., MARTA ALVAREZ,
and JULIE M. GONZALEZ,

    Defendants.
_____/

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS

Defendants Gardens on the Bay Owners Association, Inc., Marta Alvarez, and Julie M. Gonzalez, through their undersigned counsel, herein set forth their "Memorandum of Law in Opposition to Plaintiff's Motion for Protective Order and Sanctions."

By his motion, Plaintiff seeks to prohibit the taking of his deposition until sometime after the settlement conference before Magistrate Judge O'Sullivan. He argues that allowing his deposition to be taken in advance of the settlement conference will be an impediment to settlement, and that Defendants' only motivation in deposing Plaintiff is to cause him "annoyance, embarrassment, oppression, or undue burden or expense." Neither suggestion is true.

Defendants want to depose Plaintiff because it will facilitate, rather than impair, the possibility of settlement. If Defendants' counsel has no opportunity to assess the strength or weakness of Plaintiff's claims through a deposition, he cannot properly advise his clients whether to accept or reject any offer of settlement. On the other hand, if Plaintiff has been

deposed, Defendants' counsel will be in a better position to answer the typical questions any client would ask at a settlement conference, such as: "Should I agree to this settlement? If so, why? If not, why not?"[1] The response that counsel would have to give if he cannot depose Plaintiff - - "I have no idea if the amount he's demanding to settle fairly approximates his damages or he has a snowball's chance in hell of proving his claim, but it's going to cost you 'x' dollars to defend the case, so you might as well use that money to pay the plaintiff and his law firm and be done with it" - - is the lazy response, and not one that the undersigned is in the habit of providing when asked by his clients if they should settle.[2]

Nor is it true that Defendants want to annoy, harass, oppress, or cause Plaintiff undue burden or expense. Defendants simply want to find out if Plaintiff "has a case." Defendants want to know, for example, why Plaintiff is basing his minimum wage claim on his "net" hourly pay, as opposed to his "gross" hourly pay, when it is the employee's "gross" hourly rate that must meet the federal minimum hourly wage requirements. Learning that will help Defendants decide whether that claim has any merit. Defendants' counsel sent Plaintiff's counsel a letter, asking that very question and pointing out that at all relevant times Plaintiff's *gross* hourly rate exceeded the federal minimum wage. Plaintiff's counsel said they would ask their client for his response and get back to Defendants' counsel

---

[1] Indeed, Plaintiff himself acknowledged the difficulty in assessing the realistic potential for settlement when, in his draft of the Rule 26(f) Joint Planning and Scheduling Report, he represented with regard to the "Status and Likelihood of Settlement," that "because the Parties have yet to engage in any discovery, the Parties are unable to determine the likelihood of settlement."

[2] Defendants take umbrage at Plaintiff's thinly veiled lamentation in Paragraph 7 of his motion that whatever amounts paid to the undersigned to take Plaintiff's deposition would mean that much less is available to settle the case. Defendants may feel—rightly so—that the deposition is a justifiable expense since it would further illuminate the emerging weaknesses in Plaintiff's case. In any event, Plaintiff has no right to complain about the Defendants' expenditure of defense funds because he has no legitimate entitlement to those funds. Nor should Plaintiff be complaining about the costs associated with defending *his own* deposition, since Plaintiff dragged Defendants into court and has forced them to defend against his claims.

with an answer, but no answer has been forthcoming. Similarly, Defendants want to know how it is that Plaintiff calculates that he's worked an average of 54 hours per week for the last three years, when Defendants' video footage from roughly mid-October, 2016 to late January, 2017, shows him arriving at work around 7 a.m. and leaving each day around 3:30 p.m.[3] That is 12 weeks of 14 additional hours allegedly worked for that time period, or 168 hours, that is contradicted by the video. If he did not really work an additional 168 hours during those 12 weeks, when did he squeeze them in so as to justify his claim that for three straight years, he worked an "average" of 14 additional hours per week? That is a question Defendants would ask Plaintiff at his deposition.

Perhaps if Plaintiff had provided relevant support for his claim as part of his Statement of Claim or Amended Statement of Claim, Defendants would not be in the dark. But Plaintiff has not done so. Rather, he has submitted documents that precede the relevant time period, and if anything support Defendants' defenses rather than Plaintiff's case. As a result, significant questions stand unanswered. A deposition would help to fill in at least some of those blanks and give Defendants a better idea if a settlement is appropriate.

Defendants do not disagree that to have to appear at a deposition and answer questions under oath is a burden for *anyone*. But the proposition that it is an *undue* burden for a *plaintiff* to explain to the defendants, under oath, *why* he is suing them, is patently ridiculous, and one for which this Plaintiff has cited no support in the case law.[4]

---

[3]   Up until April 17, 2017, Plaintiff worked five days per week, with Wednesday and Sunday off. Effective April 17, 2017, Plaintiff's workweek was reduced to four days, with Tuesday, Wednesday, and Sunday off.

[4]   If anything, refusing to allow Plaintiff's deposition until after the settlement conference places an undue burden on Defendants, which include an 86 year old woman and a woman with a demanding, full time job. Forcing Defendants to attend a settlement conference without allowing them to gain a sense of the strength of Plaintiff's case and test the factual basis for his allegations

3

To support his motion, Plaintiff makes a series of misstatements about what has transpired between his counsel and Defendants' counsel. These are addressed below.

**Defendants Only "Unilaterally" Set Plaintiff's Deposition After Plaintiff's Counsel Refused to Cooperate in Setting a Date**

A central thrust of Plaintiff's arguments is the contention that Defendants set his deposition "unilaterally." Defendants acknowledge that they selected a date for Plaintiff's deposition, but only after *repeated* efforts to work out a mutually agreeable date. In any event, Defendants' "unilateral" scheduling of Plaintiff's deposition is not grounds for a protective order.

On May 22, 2017, Andrew Tramont, counsel for Defendants, proposed a two week time period—the week of June 12 and the week of June 19—during which Plaintiff's deposition could be scheduled, and noted he was "flexible in terms of a date during those two weeks." Exhibit A. Rivkah Jaff, Plaintiff's attorney, responded that her firm had no availability during those weeks. *See* Exhibit B. Tramont expressed his willingness to "make ourselves available for both completion of the Rule 26 conference and [Plaintiff's] deposition in advance of the currently-scheduled mediation before the Magistrate…" (Exhibit C) and later followed up with a request for "ANY date prior to the mediation which you will agree to regarding our taking of your client's deposition." Exhibit D.

The next afternoon, having not received any communication from Plaintiff's counsel, Defendants served their Notice of Deposition. In the service email, Bradley Aserlind, counsel for Defendants, reiterated "we are available in June to take your client's deposition, and you did not indicate your firm was unavailable any dates other than the

---

lessens the likelihood of a fair, informed settlement, especially in light of the extant facts. This, plus the required mediation that would ensue following an unsuccessful settlement conference, which would also necessitate the expenditure of additional time, effort, and attorney hours, amounts to an significant burden on Defendants.

weeks of June 12 and June 19. As Andy told you, we need to take your client's deposition prior to the settlement conference on June 28 so that we are in a position to make an informed settlement recommendation." Exhibit E. Plaintiff's counsel did not confirm her availability (or lack thereof) for a June deposition and demanded the withdrawal of the Notice of Deposition, to which Tramont responded: "So are you saying that there is no date prior to the June 28th settlement conference that will work for your client's deposition? *If there is an available date, please let me know and I will move around my schedule so as to be available to take his deposition*." Exhibit F (emphasis added). Later that afternoon, Tramont reiterated his willingness to move his schedule around to accommodate Plaintiff and his counsel's schedule so that Defendants could depose Plaintiff prior to the settlement conference. *See* Exhibit G.

It is evident from these email exchanges that Defendants' counsel clearly communicated a desire to take Plaintiff's deposition prior to the settlement conference and offered Plaintiff and his lawyers almost total flexibility in determining the exact date and time. These communications took place more than one month prior to the settlement conference—Plaintiff and his counsel were provided with ample "lead time" and myriad options for mutually scheduling the deposition. However, Plaintiff's counsel refused to offer any alternative dates in the month leading up to the settlement conference, forcing Defendants to schedule the deposition on their own.

Defendants submit that Plaintiff's refusal to agree to a deposition date is not a reflection of Plaintiff or counsel's lack of availability or the existence of any hardship or undue burden, but rather because Plaintiff and/or his lawyers would simply prefer not to attend to a deposition until after the settlement conference. However, as discussed more

5

thoroughly above, early developments have called into question the merits of Plaintiff's claims, and Defendants will be unable to make an informed settlement decision without doing the bare minimum of discovery required to test the strength of Plaintiff's claims. In any event, the mere fact that a party has "unilaterally" set a deposition is not sufficient to warrant a protective order:

> Plaintiff argues that Defendant violated the Federal Rules of Civil Procedure by failing to notify Plaintiff's counsel before scheduling the depositions, but that argument is not convincing. Pursuant to Rule 30(b)(1), a party must only provide "reasonable notice in writing to every other party" that a deposition will take place. The Rule, therefore, simply requires that parties be given reasonable advance notice of a deposition. The Rule does not require, as Plaintiff argues here, that such advance notice occur before the deposition is scheduled; all that is required is that parties be given notice of a deposition a reasonable period of time in advance thereof. BCNY's deposition notice here—served on April 19, 2006—provides sufficient advance notice of the May 19 and 21, 2006 depositions under the Federal Rules.
>
> While the Court is sympathetic to the deponents' scheduling conflicts (and, further, believes that the parties could have worked together to resolve the issues presented in the instant Motion), it cannot conclude that BCNY acted unreasonably in unilaterally selecting the deposition dates…
>
> At bottom, BCNY was free to unilaterally select the deposition dates, subject only to providing "reasonable notice" to the parties under the Federal Rules of Civil Procedure and the Local Rules of this Court, which advance notice BCNY has provided. *Cf. Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381, 383 (M.D.N.C.1988)(party may unilaterally designate location of deposition). Accordingly, there exists no basis upon which to grant Plaintiff's Motion.

*Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, 05-61225-CIV, 2006 WL 8411611, at *2 (S.D. Fla. May 17, 2006); *see also Paxton v. Great Am. Ins. Co.*, 08-81431-CIV, 2009 WL 5064054, at *7 (S.D. Fla. Dec. 16, 2009) (denying motion for protective order when "counsel's lack of any effort whatsoever to work with [p]laintiffs' counsel to schedule these depositions was prejudicial to [p]laintiffs, who repeatedly attempted to create a mutually convenient schedule."). Thus,

to the extent Plaintiff's motion seeks a protective order because Defendants unilaterally set his deposition, the motion should be denied.

**Plaintiff Should Not be Permitted to Impede the Progression of this Case by Refusing to Complete the Rule 26 Conference**

One of the grounds upon which Plaintiff relies in his Motion for Protective Order is the parties' purported failure to finish the required Rule 26(f) conference. Plaintiff argues that discovery cannot commence until the conference report has been filed, and his lawyers intimate that they will "complete" the conference some time at their leisure prior to report's due date (June 30, 2017 per the Court's Order [D.E. 13]).

Counsel for the parties conferred via telephone on May 11, 2017 as required by the Court's May 2 Order (D.E. 13). Following the telephone conference, Rivkah Jaff emailed a draft "Joint Scheduling Report" to Defendants' counsel for review and solicited proposed changes. Exhibit H. On May 12, Bradley Aserlind responded with Defendants' proposed changes (Exhibit I), which modified Plaintiff's proposal by, *inter alia*, compressing the discovery timeline and moving trial forward[5]—requests that are eminently reasonable for this relatively uncomplicated FLSA case. Plaintiff's counsel never responded to the schedule proposed by Defendants.

When Andrew Tramont first inquired on May 22 about taking Plaintiff's deposition (Exhibit A), Jaff replied via email that the parties still needed to complete the Rule 26 conference and would not agree to the commencement of discovery until such time. *See* Exhibit B. After that email, Defendants' counsel indicated multiple times in separate communications that although they disagreed with Plaintiff's contention that discovery was

---

[5] Plaintiff proposed a discovery cutoff of April 1, 2018 and the week of July 23, 2018 as a trial date. Defendants countered with a discovery deadline of September 11, 2017 and a trial during the week of November 13, 2017. *See* Exhibit I.

7

prohibited prior to the completion of the Rule 26 conference, they would be willing to complete the conference at Plaintiff's convenience, and they requested a continuation of the conference as soon as possible.[6] *See* Exhibit E; F; G. Plaintiff's counsel only response to these entreaties was that they would agree to complete the conference prior to the June 30 deadline set by the Court's Order. *See* Exhibit J ("We have not completed our Rule 26(f) Conference and we will ensure that we complete it by June 30 in time to file the JSR"); Exhibit K ("As I said before, we intend to comply with the Court's Order and file the JSR timely but cannot march to your demands").

Defendants suspect—with good reason given the refusal of Plaintiff's counsel to provide dates and times they are available—that Plaintiff intends to wait as long as possible before completing the Rule 26 conference, perhaps even until the June 30 deadline for submitting the report, thereby frustrating Defendants' efforts to obtain discovery in this matter prior to the scheduled settlement conference. As discussed above, taking Plaintiff's deposition in advance of to the settlement conference is critical due to the ongoing revelation of significant weaknesses in his case and the undersigned counsel's obligation to provide a fair, informed recommendation to their clients regarding a possible settlement. Defendants submit that Plaintiff should not be allowed to hold this case hostage—i.e., impose a unilateral stay on discovery this action—until July simply by avoiding the resumption and completion of the Rule 26 conference. Defendants remain ready and willing

---

[6]   "[W]e have scheduled your client's deposition more than one month from now to give us ample time to complete the conference. *We are available any time prior to then to finish the conference, including this week.* Please let us know the earliest time one of you is available to complete the required Rule 26 discovery conference." Exhibit E (emphasis added).

8

to hold a second conference and initiate discovery.[7] A protective order is not warranted and the Court should allow Plaintiff's deposition to take place prior to the scheduled settlement conference.

**Plaintiff's Request for Fees Must Be Denied**

Plaintiff requests attorney's fees for preparing his motion. As a threshold matter, the authority cited, "Rule 37(a)(4)(A)," does not exist and therefore Plaintiff may not be awarded fees under that rule. Plaintiff may be referring to Fed. R. Civ. P. 37(a)(5)(A), which provides that "if the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." However, this provision is only implicated when a party files a "Motion for an Order Compelling Disclosure or Discovery." Motions for protective orders are not subject to Rule 37(a)(5)(A)'s fee provision, so Plaintiff's request for attorney's fees must be denied.

**Conclusion**

Defendants recognize that in some FLSA cases, it may not be cost effective to engage in discovery prior to the court-mandated settlement conference. Such cases include those, for example, where a Plaintiff provides voluminous supporting documentation for his or her claim, where a Defendant examines its own records and determines it has made payroll errors, or both, and where further discovery would only confirm what both parties already

---

[7] It must be emphasized that, contrary to Plaintiff's assertions, Defendants are not attempting voluminous, time-consuming, expensive, or repetitive discovery. Defendants have only proposed taking one deposition prior to the settlement conference—that of the Plaintiff, who haled Defendants into court and upon whose bare assertions the entire case is founded—and they share Plaintiff's desire to keep fees and costs down.

know: that the defendant is liable for *something* for violating the FLSA. Here, none of these circumstances exists. Plaintiff's "supporting documentation" lends absolutely no credence to his claims, and the more information uncovered by Defendants' investigation of the facts material to this lawsuit, the less likely it appears that Plaintiff has a viable FLSA claim.

Thus, prior to engaging in serious settlement discussions, Defendants believe *one* deposition—of the Plaintiff—would be highly illuminating of the facts and legal issues in this dispute. To that end, Defendants made numerous good-faith attempts to mutually schedule Plaintiff's deposition and complete the required Rule 26 conference. These efforts were stonewalled and eventually resulted in the Defendants doing the only thing they could do—send out the notice of deposition. The Court should deny Plaintiff's motion in its entirety.

Respectfully submitted,

By: */s/ Andrew V. Tramont*
ANDREW V. TRAMONT, ESQ.
Florida Bar No. 322830
avt@rtgn-law.com
BRADLEY B. ASERLIND, ESQ.
Florida Bar No. 101623
bba@rtgn-law.com
RODRIGUEZ TRAMONT & NUÑEZ, P.A.
255 Alhambra Circle, Suite 1150
Coral Gables, FL 33134
Telephone: (305) 350-2300
Facsimile: (305) 350-2525
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being is being served this day on all counsel of record or pro se parties identified on the

attached Service List in the matter specified, either via transmission or Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                      /s/ *Andrew V. Tramont*
                                      ANDREW V. TRAMONT, ESQ.

## SERVICE LIST

**RAMON MANUEL ADLER v. GARDENS ON THE BAY OWNERS ASSOCIATION. INC. et al.**
**CASE NO. 17-cv-21544-UNGARO/O'SULLIVAN**
United States District Court, Southern District of Florida

Jamie H. Zidell
Florida Bar No. 10121
Email: zabogado@aol.com
Rivkah Fay Jaff
Florida Bar No. 107511
Email: rivkah.jaff@gmail.com
Neil Tobak
Florida Bar No. 93940
Email: ntobak.zidellpa@gmail.com
J.H. Zidell, P.A.
300 71st St., Ste 605
Miami Beach, FL 33141
Telephone: (305) 865-6766
Facsimile: (305)-865-7167
*Attorneys for Plaintiff*
**Via CM/ECF**